IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHANITA FULSON, as Natural
Mother of Minor, M.D.,

        Plaintiff,

v.

Case No. 18-2391-DDC-KGG

NPC QUALITY BURGERS, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff and defendant have filed a Joint Motion for Approval of Minor's Settlement (Doc. 22). This motion asks the court to approve a proposed settlement that will resolve all disputes in the case. Specifically, their motion advises that the parties mediated with a mutually agreeable mediator on February 26, 2019. After several hours, they agreed to settle plaintiff's claims. But because plaintiff M.D. is a minor, the parties believe, they must submit their putative settlement to the court for review and approval. The court agrees with their conclusion.

Here, plaintiff has invoked the court's subject matter jurisdiction over claims presenting a federal question. Specifically, her Complaint asserts claims under 42 U.S.C. § 2000e-2 (sexual harassment in employment) and § 2000e-3 (retaliation). Whether a minor plaintiff must secure court approval of an agreement to resolve a federal claim is a relatively unsettled question. But this court and others have applied state law to evaluate proposed settlement of such claims. *See*, *e.g.*, *S.C., as Parent and Next Friend of A.J., a Minor v. Lansing Unified Sch. Dist. # 469*, No. 18-2228 (D. Kan. April 10, 2019) (Doc. 49). In *S.C.*, the court concluded that the Tenth Circuit had not addressed this issue directly. But the court predicted that our Circuit, if presented with the question, would adopt the approach applied in *Nice v. Centennial Area Sch. Dist.*, 98 F.

Supp. 2d 665, 667–69 (E.D. Pa. 2000) (citing *Reo v. U.S. Postal Serv.*, 98 F.3d 73 (3d Cir. 1996)).  *See Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (concluding district court's duty to review settlement involving minor plaintiff derives from Federal Rule of Civil Procedure 17(c)).

In *Nice*, a minor plaintiff had asserted a claim under another federal civil rights law, 42 U.S.C. § 1983.  When asked to approve a putative settlement of that minor's claim, the Pennsylvania federal court concluded that § 1983 doesn't provide a "rule of decision" whether a federal court should review a minor's compromise of a civil rights claim.  So it turned to state law because, traditionally, state law has developed the law controlling family matters.  Thus, *Nice* used state law principles to evaluate the minor's settlement of his federal claim.  98 F. Supp. 2d at 669; *see also J.B., a Minor, by W.B., Her Father & Nat. Guardian v. Troon Fla. Leasing Co., LLC*, No. 3:18-cv-01492-MCR-EMT, 2018 WL 7317043, at *1 (N.D. Fla. Nov. 14, 2018) (applying state law when approving settlement in context of Title VII claims).

The court finds *Nice*'s reasoning persuasive and, in the absence of controlling authority, adopts it here.  This conclusion leads to one more choice of law question:  which state's law should the court apply?  Plaintiff alleges she was employed by defendant NPC Quality Burgers, Inc., a Kansas corporation.  Plaintiff resided in Kansas during the time germane to her claims and, she alleges, she worked at one of defendant's restaurants in Kansas.  Also, plaintiff alleges that the harassing and retaliatory conduct occurred in Kansas.  In sum, all known factors favor Kansas law and nothing favors a contrary conclusion.  The court thus follows Kansas law to decide whether review is required and, if so, the standard governing the review.

This leaves one final threshold question.  During the settlement review hearing, the parties asked the court to refrain from discussing the specific parameters of their putative

settlement in a public order. In generalized fashion, they made two arguments to support this request. First, plaintiff argued, disclosing the settlement's specifics would provide aspiring wrongdoers with adequate information to: (1) identify the minor plaintiff; and (2) motivate them to deprive her wrongfully of the settlement's proceeds. Next, defendant argued that it preferred not to publicize its decision to settle employment claims. But the parties conceded that confidentiality wasn't a condition of their settlement agreement. They plan to settle the case— assuming the court approves the settlement—even if the court rejects their sealing request.

Deciding this confidentiality request begins with the legal standard adopted by the Supreme Court and refined by our Circuit. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted). This right is independent of "a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Id.* Instead, "[t]he interest necessary to support . . . compel[ed] access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 597–98. "Likewise, the common law right to access court records 'is an important aspect of the overriding concern with preserving the integrity of the law enforcement and judicial processes.'" *United States v. Walker*, ___ F. App'x ___, 2019 WL 325111, at *8 (10th Cir. Jan. 23, 2019) (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985)).

The confluence of these principles creates "a *strong presumption* in favor of public access," as "the interests of the public . . . are presumptively paramount[ ] [when weighed] against those advanced by the parties." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (emphasis added) (internal quotation marks omitted). Three factors, perhaps among others, support the strong presumption favoring public access. *Walker*, 2019 WL 325111, at *8.

First, the purposes served by "public access to judicial records are heightened when 'the district court use[s] the sealed documents to determine litigants' substantive legal rights.'" *Id.* (quoting *Pickard*, 733 F.3d at 1302). Second, where a judge decides the question, not a jury, the importance of public access is "even more significant." *See id.* (citing *Press-Enter. Co. v. Superior Court of Cal.*, 478 U.S. 1, 12–13 (1986); *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 179 (5th Cir. 2011) ("[T]he fact that there is no jury at the sentencing proceeding, in contrast to jury trials, heightens the need for public access.")). Third, where the sealed information already has been disclosed in a public proceeding, "a party's personal interest in sealing the material is diminished." *Id.* (citing *Pickard*, 733 F.3d at 1305; *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)).

But the right of public access to judicial records is "not absolute," as "[e]very court has supervisory power over its own records and files," thus providing it with authority to seal court documents. *Nixon*, 435 U.S. at 598; *see Pickard*, 733 F.3d at 1300. So, "the 'strong presumption of openness can be overcome where countervailing interests *heavily outweigh* the public interests in access.'" *Walker*, 2019 WL 325111, at *9 (quoting *Pickard*, 733 F.3d at 1302 (emphasis added) (internal quotation marks omitted)). Putting it another way, "[t]he party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

The leading cases identify some situations where public access properly gives way to the interest in sealing or other limited access. They include circumstances where the records are likely to be used for "improper purposes," including "'to gratify private spite or promote public

4

scandal,'" or to "serve as reservoirs of libelous statements for press consumption." *Nixon*, 435 U.S. at 598 (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)). But even in these situations, any limit imposed on public access must be "narrowly tailored to serve th[e] interest" that sealing or other restricted access will protect. *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986); *see Pickard*, 733 F.3d at 1304.

The parties' arguments here don't carry the burden required to displace the strong presumption favoring public access. The first argument—a sealed or, at most, vague discussion of the settlement is needed to protect plaintiff from potential grifters who might wrongfully deprive her of the settlement's proceeds—has some appeal. After all, plaintiff has litigated this case as a minor and she has a commendable plan for using the settlement's proceeds: to pursue her education. But the proposed settlement's structure protects the minor plaintiff until she turns 18. As discussed more fully below, the parties propose to use the procedure adopted in Section 59-3055(a) of the Kansas Statutes Annotated. This statute delays a minor plaintiff's access to funds until the minor turns 18. This provision provides no restriction, however, on a person who has turned 18. The court does not believe the federal judiciary should expand the protections that Kansas law has elected to provide. In short, the court has concluded that it should evaluate the settlement under Kansas law. It declines to add its own gloss to that state's law.

The second argument is less compelling. This argument contends that it is in defendant's interests not to publicize settlement of employment claims. Perhaps that is so, and defendant is free to impose that confidentiality requirement in any settlement it reaches with a person who has achieved majority age. The complicating fact here is that defendant has chosen to settle a claim made by a minor plaintiff. That settlement, defendant agrees, is conditioned on court approval. The public's interest in knowing why the court has decided to approve a compromise of a

minor's claim exceeds defendant's interest in confidential settlements. This is particularly so when, as here, confidentiality is not a condition precedent of the proposed settlement. And at the very least, the defendant's interest is insufficient to displace the "strong presumption" favoring public access.

With these threshold issues decided, the court now addresses the substantive question presented by the parties' joint motion: Does Kansas law require court approval of a settlement with a minor? And if so, does the putative settlement comply with the standard adopted by Kansas law?

On the first question, calling court approval a "requirement" may overstate it a bit. The more precise—and pragmatic—expression of the principle is to say that Kansas law requires court approval of a settlement contract before it will bind a minor plaintiff. *Childs By & Through Harvey v. Williams*, 757 P.2d 302, 303 (Kan. 1988). ("Because a minor can disavow a contract within a reasonable time after reaching majority, it is necessary to reduce a minor's settlement to judgment with court approval to make it binding.").

A reviewing court's decision whether to approve a putative settlement is expressed in clear terms by the Kansas appellate courts. Kansas law requires court approval to ensure that the settlement protects the minor's interests. *White v. Allied Mut. Ins. Co.*, 31 P.3d 328, 330 (Kan. Ct. App. 2001). More to the point, "Kansas' appellate decisions repeatedly urge reviewing courts to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a 'friendly' hearing." *Id.* When Kansas courts review proposed settlements, they "may not simply rely on the fact that the minor's parents have consented to the proposed agreement. Instead, the court must determine whether the agreement is in the minor's best interests." *Id.* The Kansas cases have quoted the Alabama Supreme

Court's view that approval should be given not because there is agreement but, instead, "because it appears from the evidence that the amount is just and fair" and "conservative of the minor's interests." *Mo. Pac. Ry. Co. v. Lasca*, 99 P. 616, 618 (Kan. 1909) (quoting *Tenn. Coal, Iron & R.R. Co. v. Hayes*, 12 So. 98, 103 (Ala. 1892)).

At the settlement approval hearing in this case, plaintiff's counsel questioned Ms. Fulson about the terms of the settlement of the minor's claim. According to this testimony, plaintiff M.D. worked for defendant during a five-month period in 2017 and 2018. During that employment, plaintiff asserts that co-workers touched her body in an unwelcome and offensive fashion. M.D. reported this to her mother, who said she called the manager of the restaurant where M.D. worked. M.D. also testified. She said she personally complained to her manager, but the co-workers continued to touch her offensively. This kind of offensive touching, M.D. testified, occurred "multiple times" and after M.D. and her mother had complained. Plaintiff's counsel represented that he had evaluated this evidence alongside the legal requirements for a sexual harassment case. In counsel's estimation, the case presented both factual and legal risks and a trial could produce a range of outcomes. Presented with an opportunity to mediate and then, at the mediation, an opportunity to settle, counsel concluded that defendant's $35,000 offer was in the minor's best interest. M.D. agreed, as did her mother. Of the $35,000, $18,671 will be placed into a bank account that M.D. can access after she turns age 18. This amount was divided between gross wages of $7,000 (subject to W-2 withholding) and $14,000 for non-economic damages (subject to 1099 reporting). The remainder—$14,000, equaling 40% of the total settlement amount—is the agreed amount for attorneys' fees under the engagement agreement between M.D.'s mother and plaintiff's counsel. Counsel reported that 40% is typical

of fee contracts in Title VII cases, particularly for hourly workers at the lower end of the wage scale. Counsel also reported that many employee-focused firms charge an even higher rate.

The court concludes that the putative settlement is "in the minor's best interests." *White*, 31 P.3d at 330. Title VII plaintiffs face many obstacles and some employers in such cases refuse to settle until a case has survived summary judgment. The court is mindful that co-workers, *i.e.*, non-supervisors, allegedly harassed M.D. based on her sex, which interposes another layer of challenges for the plaintiff's case. And the court is persuaded that the fee award, though higher than contingent fees charged in other kinds of cases, is a reasonable fee for a Title VII case brought by an hourly worker. The court also notes that M.D.'s mother approved the fee arrangement and she had every incentive to minimize the fee charged in the case. And, to the extent the court's role in approving this settlement derives from Federal Rule of Civil Procedure 17(c), the court finds no apparent conflict between Ms. Fulson's interests and M.D.'s interests, especially where M.D. is the recipient of the settlement proceeds. The settlement of this case is in M.D.'s best interests.

Consequently, the court approves the proposed settlement. Consistent with the terms of the parties' settlement agreement, the court orders that the $18,671 payable to plaintiff be placed into a restricted account subject to the restrictions of Section 59-3055(a) of the Kansas Statutes Annotated. On payment into that account, ownership of those funds shall vest in M.D. and will be payable to M.D. but only after she has turned 18 years old. The court will enter a separate order, filed under seal because it identifies the minor plaintiff by name, providing specific instructions to the institution where plaintiff establishes the restricted account. The court also finds that the $14,000 is a fair and reasonable fee.

**IT IS THEREFORE ORDERED THAT** the parties' Joint Motion for Approval of Minor's Settlement (Doc. 22) is granted.

**IT IS FURTHER ORDERED THAT** the parties shall submit a stipulation signed by counsel for all parties under Federal Rule of Civil Procedure 41 within ten days of this Order.

**IT IS SO ORDERED.**

**Dated this 24th day of April, 2019, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Court**